Case 4:15-cv-02736   Document 19   Filed in TXSD on 06/17/16   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
June 17, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT STREET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-02736 |
| | § | |
| MAVERICK TUBE CORPORATION | § | |
| d/b/a TENARIS BAY CITY, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry No. 11). Plaintiff Robert Street ["Street"] has sued his former employer, Defendant Tenaris Bay City, Inc. ["Tenaris"],[1] alleging violations of Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq.*, 42 U.S.C. § 1981 ["Section 1981"], and the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12112, as well as wrongful discharge; fraud; slander; and tortious interference with a contract. (Plaintiff Robert Street's First Amended Complaint and Jury Demand ["Complaint"], Docket Entry No. 9, at ¶¶ 43-76). Before the court is Defendant's motion to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defendant's Amended Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint ["Motion"], Docket Entry No. 12). Plaintiff has responded in opposition to the motion, and Defendant has replied. (Plaintiff's Rule 10 Joinder and Supplemental Response to

---

1. In his initial Complaint, Plaintiff identified "Maverick Tube Corporation d/b/a Tenaris Bay City, Inc." as the Defendant. (Docket Entry No. 1 at ¶ 2). However, in his Amended Complaint, Plaintiff refers to the Defendant as "Tenaris Bay City, Inc.," or alternatively, as "Tenaris Bay City Inc. f/k/a Maverick Tube Corporation." (Compl. ¶¶ 2, 8).

Defendant's Amended 12(b)(6) Motion to Dismiss or in the Alternative Rule 12(e) Motion for More Definitive Statement ["Response"], Docket Entry No. 13; Defendant's Reply in Support of its Amended Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint ["Reply"], Docket Entry No. 16). After considering the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Defendant's motion be GRANTED, in part, and DENIED, in part.

## I. Background

Robert Street, a white male, worked for Tenaris as a Health Safety and Environment ["HSE"] Site Coordinator at its Bay City facility construction site, from April 21, 2014, until his termination on September 2, 2014. (Compl. ¶¶ 14-15, 26). The precise nature of Street's employment with Tenaris is unclear. Plaintiff alleges only that his position was "exempt," and that he received "a compensation package which included a base salary of $105,000.00 per year with a bi-weekly per Diem of $1,900.00, as well as a comprehensive benefits package." (*Id.* at ¶ 15).

Six weeks after Plaintiff was hired, Tecia Jackson, a black female, also began working as an HSE Site Coordinator at Defendant's Bay City location. (*Id.* at ¶ 16). According to the Amended Complaint, almost immediately after Jackson began working, she was subjected to "disparate treatment" and "harassment" by other Tenaris employees. (*Id.* at ¶ 17). Plaintiff alleges, for instance, that his supervisor, Don Stuckey, began "monitoring [] Jackson's comings and goings," and that one of Defendant's independent contractors, Ruben Campian, "threatened [] Jackson's job simply because she crossed into a red barricaded area to avert injuries and possible loss of life." (*Id.* at ¶¶ 19-20). Plaintiff also complains that Campian "would purchase ice cream for the HSE group, but would not acknowledge [] Jackson or allow her to participate."

(*Id.* at ¶ 20). In addition, Plaintiff alleges that Tenaris construction site supervisor, Brian Theros, told another employee that he should "not worry about" Jackson, because he would "take care of her." (*Id.* at ¶ 21). Plaintiff further alleges that Theros once referred to Jackson as a "jig-a-boo," and that one of his supervisors, Lou Baker, "constantly" referred to Jackson as "the black lady." (*Id.*). He also complains that another HSE site coordinator, Andres Moreno, intentionally "disrupted" a safety meeting that Jackson was leading. (*Id.*). In this lawsuit, Street alleges that he reported these incidents, as well as "numerous other examples of [] wrongful and discriminatory treatment of [] Jackson," to his supervisors, but to no avail. (*Id.* at ¶¶ 19-21).

In his Amended Complaint, Plaintiff alleges that, on June 23, 2014, Stuckey asked him to contribute to a "list" of Jackson's alleged workplace violations. (*Id.* at ¶ 17). Plaintiff claims that when he refused to do so, he was "targeted" by Tenaris senior management for "refus[ing] to play the[] game and provide false information to use against [] Jackson." (*Id.* at ¶¶ 18, 31).

According to the Amended Complaint, on an unspecified date "after these incidents," but before September 2, 2014, Jackson lodged a complaint of discrimination with the Equal Employment Opportunity Commission ["EEOC"]. (*Id.* at ¶ 23). Plaintiff claims that he "agreed to participate on [Jackson's] behalf with the proceedings and investigation," and that he served as a "known witness" for her. (*Id.*).

On September 2, 2014, Plaintiff reportedly told his supervisor, Don Elam, that he had fractured his foot, and would be unable to work "out in the field" for the next four to six weeks. (*Id.* at ¶¶ 24, 26). According to Plaintiff, Elam initially agreed to let him "work in the office" while his foot healed. (*Id.* at ¶ 26). A few hours later, however, Elam informed Street that his employment had been terminated, because he was "not a good fit." (*Id.*). Plaintiff alleges that

his employer-provided health insurance was immediately "discontinued." (*Id.* at ¶ 29). Jackson was also reportedly terminated, earlier that day, for "not getting along with others." (*Id.* at ¶ 26).

On an unspecified date after his termination, Street filed a complaint of discrimination and retaliation with the EEOC. (*Id.* at ¶ 27). Tenaris responded to Street's EEOC complaint, on April 28, 2015. (*Id.*). Approximately four months later, on September 19, 2015, Plaintiff filed this lawsuit.[2] (*See* Docket Entry No. 1). Plaintiff amended his complaint on December 6, 2015.

Liberally construed, the Amended Complaint lodges the following causes of action: (1) sex and race discrimination under Title VII and Section 1981; (2) disability discrimination under the ADA; (3) retaliation under Title VII; (4) wrongful discharge under Texas law; (5) fraudulent misrepresentation; (6) slander; and (7) tortious interference with a contract. (Compl. ¶¶ 43-76).

Defendant now moves to dismiss the Amended Complaint, under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to adequately plead claims on which relief can be granted. (Mot. 1-2). In the alternative, Defendant asks that Plaintiff be required to plead a more definite statement of his claims, under Federal Rule of Civil Procedure 12(e). (*Id.* at 18-19).

**II. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true, and view them in the light most favorable to the plaintiff. *Spectrum Stores, Inc. v. Citgo*

---

2. The Amended Complaint does not identify the specific allegations made by Street in his EEOC complaint. In addition, it is unclear what action, if any, was taken by the EEOC with respect to Plaintiff's charge. However, Defendant does not contend that Plaintiff failed to exhaust his administrative remedies. As a result, the court will assume, without deciding, that the exhaustion requirement has been satisfied. *See Harper v. ULTA Salon Cosmetics & Fragrance, Inc.*, No. 1:05-CV-1285-TWT, 2007 WL 528088, at *10 n.13 (N.D. Ga. Feb. 13, 2007).

*Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

In ruling on a Rule 12(b)(6) motion, the court typically may not look beyond the pleadings. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). "Pleadings," for purposes of a Rule 12(b)(6) motion, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Documents "attache[d] to a motion to dismiss are considered to be a part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotation marks omitted); *accord Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536

(5th Cir. 2003); *see Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014) ("[D]ocuments are central when they are necessary to establish an element of one of the plaintiff's claims.").

**III. Analysis**

*A. The Legal Standard for Discrimination and Retaliation Claims*

Under Title VII, it is unlawful for an employer to discriminate or retaliate against an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also prohibits retaliation against an employee who has opposed discrimination or been involved in a discrimination claim. 42 U.S.C. § 2000e-3(a). The ADA likewise prohibits discrimination against an employee on the basis of physical or mental disability. 42 U.S.C. § 12112(a). Under § 1981, employment discrimination based on race is barred as well. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *see* 42 U.S.C. § 1981(a).

Claims of employment discrimination or retaliation can be established through either direct or circumstantial evidence. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If a Plaintiff relies on circumstantial evidence, as Street does here, his claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *See id.* (applicability of *McDonnell Douglas* to Title VII discrimination and retaliation claims); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (applicability of *McDonnell Douglas* to ADA discrimination claims); *see also Lawrence v. Univ. of Tex. Med. Ctr. at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (per curiam) (stating that § 1981 claims are analyzed under the same evidentiary framework as Title VII claims). Under this framework, the plaintiff has the initial burden to make a *prima facie* case. *McCoy*, 492 F.3d at 557. If he does so, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment

action. *Id.* Once such a showing has been made, the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext for discrimination. *Id.*

*B. Title VII and § 1981 Discrimination Claims*

In his Amended Complaint, Street makes claims for sex and race discrimination under Title VII and Section 1981, based on his association with a black, female coworker, Tecia Jackson. (Compl. ¶¶ 43-49). Defendant argues that Plaintiff's Title VII and § 1981 claims must fail, because Plaintiff has not alleged any facts to show that his own race or gender were a factor in his termination. (Mot. 11-12). In addition, Defendant contends that Plaintiff has failed to allege that he had a "significant personal relationship" with Jackson. (*Id.* at 10).

In the Fifth Circuit, "§ 1981 and Title VII prohibit discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009); *see Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1988), *rev'd in part*, 169 F.3d 215 (5th Cir. 1999), *reinstated in relevant part on reh'g en banc*, *Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999). To establish a claim for "associational race discrimination," a plaintiff must show that the alleged discrimination was related to his own race, not just the race of the person associated with the plaintiff. *See Floyd*, 581 F.3d at 250 ("[A]ssociation cases are predicated on animus *against the employee* because of his association with persons of another race.") (emphasis added); *Cargo v. Kan. City S. Ry. Co.*, No. 05-2010, 2012 WL 1567166, at *2 (W.D. La. June 13, 2003) ("An associational race discrimination claim is based on the plaintiff's race, not the person the plaintiff was associated with.").

Here, Street has failed to allege that his own race played any role in his termination. The Amended Complaint alleges, expressly, and repeatedly, that Street was fired because he

7

protested discrimination against a black, female coworker, not because he was a white man associating with a black woman. (*See* Compl. ¶¶ 44-45). In those cases in which courts have found a valid associational discrimination claim, the plaintiff's race was directly related to the alleged discrimination. *See Deffenbaugh*, 156 F.3d at 588 (holding that a reasonable jury could conclude that the plaintiff, a white female, was unlawfully terminated by her employer, because she was dating a black male); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999) (holding that a white employee, who was discharged because his child was biracial, was discriminated against on the basis of his race); *Chacon v. Ochs*, 780 F. Supp. 680, 680-81 (C.D. Cal. 1991) (holding that it is unlawful to discriminate against a white woman based on her marriage to a Hispanic man).

In this case, by contrast, Street's own race is irrelevant to the complained-of discrimination. *See Cargo*, 2012 WL 1567166, at *4 (finding that a white plaintiff, who alleged that he was terminated for "st[anding] up for people of color," failed to establish an associational race discrimination claim, because the evidence suggested that the plaintiff "could have been Caucasian, African-American, or any other race and the results would have been precisely the same"). Because Street has failed to allege that his termination was related to his own race, his claim for associational race discrimination must be dismissed for failure to state a claim. *See Floyd*, 581 F.3d at 250-51 (holding that a black principal, who alleged that he was discharged due to his relationship with white track athletes, failed to establish a claim for associational race discrimination, because the evidence showed "that the racial animus was directed solely towards the white students").

The Amended Complaint also appears to allege associational discrimination based on gender. (Compl. ¶ 44). Even assuming that Title VII or § 1981 prohibit such discrimination, the

Amended Complaint fails to allege that Street was discriminated against on the basis of *his* gender. *See Stezzi v. Aramark Sports, LLC*, No. 07-5121, 2009 WL 2356866, at *5 (E.D. Pa. July 30, 2009); *see also Gallo v. W.B. Mason Co.*, No. 10-10618-RWZ, 2010 WL 4721064, at *1 (D. Mass. Nov. 15, 2010) ("It is an unsettled legal question whether Title VII prohibits gender-based associational discrimination[.]"). As a result, Plaintiff's gender discrimination claim also fails.

*C. Title VII Retaliation Claim*

Street also alleges that Defendant retaliated against him, because of his "opposition to[] the conduct of Tenaris' management in the discriminatory treatment" of Jackson; because of his "participation in the [EEOC] investigation or proceeding filed by [] Jackson;" and because he "refused to engage in illegal conduct" toward Jackson. (Compl. ¶¶ 51, 54). Tenaris argues that Street has failed to allege that he engaged in a "protected activity" under Title VII. (Mot. 13-16). The company also argues that Street has not shown a causal connection between a protected activity and retaliatory conduct, because he does not allege that Tenaris knew about Street's complaints. (*Id.* at 13-16).

To establish a *prima facie* retaliation claim under Title VII, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) his employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). "Title VII retaliation claims must be proved according to traditional principles of but-for causation. . . .This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ----, 133 S. Ct. 2517, 2528 (2013); *see Zamora*, 798 F.3d at 332.

In this case, the Amended Complaint details that Plaintiff engaged in a protected activity. Plaintiff alleges that he complained to his supervisors about the unlawful discriminatory conduct toward his coworker. (Compl. ¶¶ 17, 19-21). Plaintiff further alleges that he participated in that coworker's EEOC complaint, on her behalf, as a "known witness." (*Id.* at ¶ 23). There is no question that such conduct constitutes protected activity under Title VII. *See Pittman v. Gen. Nutrition Corp.*, 515 F. Supp. 2d 721, 742 (S.D. Tex. 2007) ("Speech in support of the rights of minorities is protected activity."); *Cargo*, 2012 WL 1567166, at *5 (assuming that the plaintiff engaged in protected activity, because he alleged that he "defended African American employees"); *Sanders v. Dillard Univ.*, No. 14-845, 2014 WL 7342440, at *5 (E.D. La. Dec. 23, 2014). Further, it is clear that Plaintiff has alleged an adverse employment action. Indeed, Defendant does not dispute that Plaintiff was terminated on September 2, 2014. *See Anderson v. City of Dallas*, 116 F. App'x 19, 27 (5th Cir. 2004) (stating that an "adverse employment action" includes "being fired").

Finally, Plaintiff has alleged a causal relationship between the protected activity and the adverse employment action. Plaintiff claims that he complained to Tenaris about unlawful discrimination against Jackson throughout the summer of 2014, and that he participated in Jackson's EEOC proceeding a few weeks before he was fired. (Compl. ¶¶ 21, 23); *see McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Plaintiff alleges, as well, that he and Jackson were both terminated on the same day. (Compl. ¶ 26). Accepting these allegations as true, it is plausible to infer that Street was terminated because he engaged in a protected activity. *See Sanders*, 2014 WL 7342440, at *5; *Vidrine v. St. Landry Parish Fire Protection Dist. No. 3*,

No. 6:12-2111, 2012 WL 6608963, at *2 (W.D. La. Dec. 18, 2012). On this issue then, Street has raised a plausible claim for retaliation under Title VII.

*D. ADA Discrimination Claim*

Plaintiff next alleges that Defendant discriminated against him on the basis of his disability. (Compl. ¶¶ 62-67). Plaintiff alleges, specifically, that he "suffered an adverse employment decision after he informed his supervisor that [his foot] would be placed in a cast and [that he] would be unable to work in the field while he was healing." (*Id.* at ¶ 63). Plaintiff further alleges that Defendant "failed to accommodate" his disability, and "failed to properly engage in the interactive process." (*Id.* at ¶ 64). Defendant argues, in his motion to dismiss, that Street has not stated a valid claim for disability discrimination, because he has not alleged facts that are sufficient to show that he is disabled, or that he was terminated because of his disability. (Mot. 17-18).

To state a *prima facie* case of disability discrimination, a plaintiff must show that: "(1) he is disabled within the meaning of the ADA; (2) he is qualified and able to perform the essential functions of his job; and (3) his employer fired him because of his disability." *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity." *Garner v. Chevron Phillips Chem. Co.*, 834 F. Supp. 2d 528, 537 (S.D. Tex. 2011) (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009)). "Major life activities" include

such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 42 U.S.C. § 12102.

Here, Plaintiff has not alleged sufficient facts to show that he has a disability within the meaning of the ADA. Plaintiff complains that, at the time he was fired, he "had been working with a broken foot and limp for several weeks," and had recently undergone an MRI. (Compl. ¶¶ 26, 29). However, he does not claim that his injury is an impairment that "substantially limits" a "major life activity;" that he "has a record of such impairment;" or that he "is regarded as having such impairment." In fact, it is well-settled that a temporary injury, such as a broken foot, is not considered a "disability" under the ADA. *See Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 448 (S.D. Tex. 2010) (An "impairment" does not include "transitory illnesses which have no permanent effect on the [plaintiff]'s health."); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."); *Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009) ("plaintiff's broken ankle, which resulted in a single, twelve-week disability leave with no alleged physical limitations thereafter, is not a disability for purposes of the ADA"). On this record then, Plaintiff has failed to raise a valid claim for discrimination under the ADA. *See Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 709 (E.D. La. 2013) (finding that a plaintiff adequately pleaded that he was disabled within the meaning of the ADA, because he alleged that, after he received a "death threat" from his supervisor, he was informed that he "might" be suffering from "Post Traumatic Disorder," and "the EEOC regulations interpreting the ADA indicate that post-traumatic stress disorder is an impairment that should easily be concluded to substantially limit brain function"); *Lockridge v. Dallas Cnty. Sch.*, No. 3:10-CV-1175-O, 2010 WL 5538436, at *4 (N.D. Tex. Dec. 8, 2010) (finding that a plaintiff failed to

plausibly allege a disability discrimination claim, because she did not allege facts to show that she suffered limitations with regard to a major life activity).

*E. Wrongful Termination*

Plaintiff also lodges a claim for wrongful discharge, claiming that he was fired "for refusing to commit an illegal act under Texas, federal, or municipal law." (Compl. ¶¶ 57-61). Plaintiff alleges here that he "was terminated for his refusal to cooperate with the unlawful and discriminatory practices of Defendant all of which were done in direct contravention to Tenaris' code of conduct as well as applicable Texas, federal, or municipal laws." (*Id.* at ¶ 58). Defendant moves to dismiss this claim as well, arguing that Street has not identified a specific illegal act that he was asked to perform, or alleged that his firing was due to a refusal to perform an illegal act. (Mot. 8).

The Texas Supreme Court has created a "narrow exception" to the at-will employment doctrine, which allows an employee to sue his employer if he is discharged for the "sole reason" that he "refused to perform an illegal act." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). To prevail on a so-called *Sabine Pilot* claim, a plaintiff must show that: (1) he was required to commit an illegal act that carries criminal penalties; (2) he refused to engage in the illegality; and (3) he was discharged solely because he refused to commit unlawful acts. *White v. FCI USA, Inc.*, 319 F.3d 672 676 (5th Cir. 2003). The first element requires proof that "the employer required, not just requested, the employee to commit unlawful acts." *White v. FCI USA, Inc.*, 319 F.3d 672, 677 (5th Cir. 2003) (quoting *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626-27 (Tex. App.—Fort Worth 1990, writ denied)).

Here, Street claims that Tenaris ordered him to violate unspecified municipal, state, and federal laws relating to unlawful discrimination, but he fails to allege that these laws carry criminal penalties. As a result, Plaintiff's wrongful discharge claim fails. *See Pease v. Pakhoed Corp.*, 980 F.2d 995, 1000 (5th Cir. 1993); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (affirming dismissal of a wrongful discharge claim because, although the plaintiff claimed that he was ordered to violate unspecified customs violations, he failed to allege that the regulations carried criminal penalties); *Adams v. Mutual of Omaha Ins. Co.*, No. 3:13-CV-4881-D, 2014 WL 1386563, at *5 (N.D. Tex. Apr. 9, 2014) (finding that a plaintiff failed to state a claim for wrongful discharge, because "the allegedly illegal activity in which he was asked to participate- discrimination on the basis of race or national origin- carries only a civil, not a criminal penalty").

*F. Fraudulent Misrepresentation*

Street also alleges that Tenaris intentionally made certain "false material representation[s]" to him. (Compl. ¶¶ 68-71). Plaintiff alleges that he suffered "additional injury and damages," because he relied on those statements. (*Id.* at ¶ 71).

To state a claim for fraudulent misrepresentation under Texas law, a plaintiff must allege: (1) that the defendant made a material representation; (2) that the representation was false; (3) that the defendant either knew that the representation was false, or that he made it recklessly, as a positive assertion, without knowledge as to its truth; (4) that the defendant intended to induce the plaintiff to act upon the representation; (5) that the plaintiff acted in reliance on the representation; and (6) that the plaintiff thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

Further, under Federal Rule of Civil Procedure 9(b), to make a valid claim for fraud, a

plaintiff must "state with particularity the circumstances constituting the fraud." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *United States ex. rel. Stephenson v. Archer W. Contractors, LLC*, 548 F. App'x 135, 139 (5th Cir. 2013) (quoting *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)); *see Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."); *see also Flaherty*, 565 F.3d at 207 ("This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.").

Here, Plaintiff's fraud allegations do not satisfy the Rule 9(b) pleading requirements. Liberally construed, the Amended Complaint alleges the following representations by Defendant:

- "Defendant was actively investigating [Street's] complaints and the disparate and discriminatory treatment of [] Jackson . . . when they were not doing so"

- "Defendant was fired for insubordination when in fact it was because he was opposing the discriminatory conduct against [] Jackson"

- Defendant was "participating with [Jackson's] EEOC investigation in to [sic] the Charge of Discrimination being made against [Tenaris] by [] Jackson"

- "Defendant stated to [its] employees and the public at large that [it] would comply with Tenaris published code of conduct as well as [its] policies and procedures which [it] did not do"

(Compl. ¶¶ 69-70).

As to all four alleged "misrepresentations," Street has not identified any specific statements that he maintains are fraudulent; the identities of the authors of those statements; or when or where those statements were made. Further, Plaintiff has failed to allege how, precisely, he relied upon the purported false representations, or how he was damaged by that reliance. On this record, then, Plaintiff has failed to adequately plead his fraud claim with particularity. For that reason, Defendant's motion to dismiss that claim, under Rule 9(b), is granted. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029 (5th Cir. 2010) (dismissing claim of fraudulent misrepresentation for a failure to meet the standards of Rule 9(b)). However, it is recommended that Plaintiff be given an opportunity to replead facts sufficient to state a claim for fraud, if he wishes to do so.

## G. Slander

Street also lodges a claim for slander. (Compl. ¶¶ 72-73). "Slander," under Texas law, "is a defamatory statement that is orally communicated or published to a third person without legal excuse." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 323 (5th Cir. 1997).

Here, Plaintiff alleges that, in response to his EEOC Charge of Discrimination, Defendant "orally made false statements" that he "was insubordinate." (Compl. ¶ 73). Plaintiff claims that these statements "injured" his "business reputation." (*Id.*). However, statements made to the EEOC during an investigation are "absolutely privileged," and cannot form the basis of claim for slander. *See Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp. 2d 730, 765 (S.D. Tex. 2010); *see also James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Wal-Mart Stores Inc. v. Lane*, 31 S.W.3d 282, 290 (Tex. App.—Corpus Christi 2000, pet. denied). Further, to the extent that Plaintiff alleges a claim for slander based on statements made before September

19, 2014, that claim is barred by the one-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (West 2002); *Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 563 (Tex. App.—El Paso 2007, pet. denied). For those reasons, Plaintiff's slander claim fails.

*H. Tortious Interference with a Contract*

Finally, Street alleges that Tenaris tortuously interfered with a contract between himself and his health insurer by "terminating his employment and immediately cancelling [his] insurance during [his] treatment [for a] known disability." (Compl. ¶ 75). Defendant moves to dismiss this claim, arguing that it is completely preempted by ERISA. (Mot. 7).

Subject to certain exceptions, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law claim will "relate to" an ERISA plan "if it has a connection with or reference to such plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). The Fifth Circuit applies a two-prong test to determine whether a state law claim is preempted by ERISA: (1) whether the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan;" and (2) whether the claim "directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (quoting *Bank of La. v. Aetna US Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006)).

In this case, Plaintiff's tortious interference with a contract claim is preempted by ERISA. The basis of the claim is that Tenaris interfered with Street's employee health insurance benefits plan by terminating his employment. (Compl. ¶¶ 74-76). The claim implicitly addresses Plaintiff's right "to receive benefits under the terms of the Plan," and it affects the

relationship between the employer, the plan, and the plan participant. Therefore, Plaintiff's tortious interference claim must be dismissed. *See DuPont*, 517 F.3d at 800.

## IV. Conclusion

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's claims for discrimination, wrongful termination, fraudulent misrepresentation, slander, and tortious interference with a contract be **GRANTED**, and that Defendant's motion to dismiss Plaintiff's claim for retaliation be **DENIED**. As to the fraud claim only, it is recommended that Plaintiff be given an opportunity to replead.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 17th day of June, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**